## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## ASHLAND

**CIVIL ACTION NO. 0:05-cv-00107-HRW**

**JIM HARDWICK and JAY SIZEMORE,**
**Individually on behalf of the members of**
**AFGE Local 1286,**                                                              **PLAINTIFFS,**

**V.**                         **MEMORANDUM OPINION AND ORDER**

**BOYD COUNTY FISCAL COURT,**                                   **DEFENDANTS.**

This matter is before the court upon Defendant Boyd County Fiscal Court's

Motion to Dismiss [Docket No. 4]. Plaintiffs filed a timely response to the motion

[Docket No. 8]. Now fully briefed, this matter is ripe for decision.

### I. Factual Background

Plaintiffs brought an action under 42 U.S.C. § 1983 (2005)  to challenge the

Boyd County Occupational License Fee as a violation of their rights under the

Fifth and Fourteenth Amendments of both the United States and Kentucky

Constitutions. The complaint requests injunctive relief against enforcement of the

tax as well as a declaration that the tax is  unconstitutional.

Plaintiffs are employed by the Federal Bureau of Prisons at the Summitt

correctional facility in Boyd County, Ky. Plaintiffs are also elected representatives

of employees at the facility belonging to the American Federation of Government

Employees, Local 1286. All employees at the Boyd County facility are subject to the occupational license fee enacted by the Boyd County Fiscal Court.

The current ordinance requires an occupational license fee equal to: 1% of all wages and compensation earned by resident or nonresident employees, or 1% of all net profits from business conducted within the county. The fee applies, with certain exceptions, to any person or entity engaged in business for profit or required to file with the IRS or Ky Revenue Cabinet. The ordinance also provides, however, that any individual or entity otherwise required to pay 1% of net profits may elect instead to pay a "Fixed Amount License Fee" amount according to a schedule set forth in the ordinance. This option is only available to those who would calculate their fee based on net profits. Thus, a partnership or self-employed individual, for instance, could pay a flat fee, but an employee must pay the 1%.

The initial category under the Fixed Amount option provides the opportunity for any person employing 0-24 persons to pay a flat $100 annual fee in lieu of the one-percent assessment. Plaintiffs state that the net effect of this option is that any person "employed by another" under the terms of the ordinance, and making more than $10,000 per year will pay more in license fees than a self-employed person earning any amount higher than that. A non-corporate business owner making $1 million per year, Plaintiffs state, will pay $100, while the lowest level full time

employee is likely to pay more in payroll tax.

Plaintiffs' complaint alleges that the ordinance draws an illegal classification in violation of the United States Constitution and the Kentucky Constitution. Defendant moves this court to dismiss Plaintiffs' Complaint on grounds of lack of standing, lack of subject matter jurisdiction, failure to state a claim upon which relief may be granted, and failure to join a party under Federal Rule of Civil Procedure 19.

## II. Analysis

### A. Standing

#### 1. Organizational Standing

Defendant argues that insofar as Plaintiffs appear in a representative capacity for members of the union, they must be dismissed as parties. The ordinance, as revised, Section 1(2) specifically excludes "the activities of trade associations or unions," from its definition of "businesses" subject to the tax. This court agrees with the Defendant.

If the union as an organization is not required to pay the tax, it cannot allege injury to itself as an organization. The United States Supreme Court has said that "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury

required by Article III." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Standing for the union cannot be premised upon its abstract interest in the rights of employees. Because the union as an entity is not subject to the tax, it suffers no injury as an entity and therefore has no standing to raise a challenge thereto.

**2. Generalized Grievance**

Defendant further argues that Plaintiffs, even in their individual capacity, lack standing to sue. Specifically, Defendants charge that Plaintiffs fail to allege a harm that is unique to them as individuals or that they have standing based on some injury distinct from that of the general public.

In addition to requirements of standing contained in Article III of the United States Constitution, the Supreme Court has identified additional "prudential requirements" of standing. Plaintiffs must satisfy both Constitutional and Prudential standing in order to survive Defendant's challenge. Among these prudential requirements is a prohibition against generalized grievances. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197 (1975).

Because the ordinance affects all employees and businesses in Boyd

4

County, Defendant submits that any injury suffered by Plaintiffs fails to cloak them as individuals with standing. Plaintiffs' response does not address Defendant's challenge to standing, nor do Plaintiffs even acknowledge that standing has been called into question. Each wage-earner in Boyd County is subject to the challenged classification and will have to pay the 1% tax. Plaintiffs have not alleged an injury distinct from that of every other wage-earner in Boyd County, and this court finds no direct injury apart from an interest shared by that large class of citizens of Boyd County. Plaintiffs as individuals therefore lack standing.

## B. Subject Matter Jurisdiction

Defendant submits that no federal question is raised in Plaintiffs' complaint. The taxing authority of a county in Kentucky originates from K.R.S. § 68.197 (2005).

Defendant relies on *Walters v. City of St. Louis, Mo.*, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954) for the proposition that the power of a municipality to tax the earnings of wage earners is not open to question on federal grounds where no issue exists as to extraterritorial application of the tax as a burden on interstate commerce and where taxpayers, withholding employer, and the income earned are all within the territory and jurisdiction

5

of the state and municipality. Defendant states that since Plaintiffs did not argue extraterritorial application/interstate commerce and since all subjects are situated within Boyd County, there is no federal question.

While the holding of *Walters* may touch upon the merits of this case, there is nothing therein that speaks to the issue of subject matter jurisdiction before this court. *Walters* also did not involve a 1983 complaint as the one instantly before the court.

An appropriate analysis of this question involves the tension between 42 U.S.C. § 1983 and 28 U.S.C. § 1341. On its face, 42 U.S.C. § 1983 appears to create a federal right of action for Plaintiffs here. That is, assuming Boyd County is a "person" for purposes of the statute (see generally, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (US 1978)), then Plaintiffs' complaint would, at first blush,  appear to properly invoke federal question jurisdiction.

However, a wrinkle arises from the intersection between 42 U.S.C. § 1983 and 28 U.S.C. § 1341. This is especially true in light of the kind of relief Plaintiffs request.

First, we can see  no apparent  reason  why Plaintiffs' complaint could

not have been filed in state court. See *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (US 1980).  There is no indication in the record of this occurring. Secondly, the Tax Injunction Act clearly prohibits a federal court from enjoining collection or levy of state taxes. 28 U.S.C. 1341 (2005). And finally, while it may still be an open question  relating  to 1983 suits for money damages, there can be no question that equitable relief is not available to the instant Plaintiffs, even when the action is brought pursuant to 1983. See *Fair Assessment in Real Estate Assoc., Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (US 1981).

Principles of federalism guide the federal courts' reluctance to intervene in matters of local tax administration. The Supreme Court in *Matthews v. Rogers* emphasized a "scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts" 284 U.S. 521, 525, 52 S.Ct. 217, 76 L.Ed. 447 (1932). The *Matthews* court also stressed that the federal courts should be reluctant to interfere with state fiscal activity by way of injunction.

Resolution of Plaintiffs' claims will involve, to a large degree, analysis of what the County is permitted to do under state law, including the KRS provision granting municipal taxing authority. A Kentucky court is

7

best suited to conduct such an inquiry and is also fully capable of

addressing any constitutional issues that arise. This, in fact, seems to have

been the guiding thought in the cases that have addressed the intersection of

42 USC §1983 and 28 USC §1341.


 Plaintiffs' case will therefore be dismissed without prejudice.[1]


Accordingly, **IT IS HEREBY ORDERED AND ADJUDGED:**

(1) that Defendant's Motion to Dismiss is **SUSTAINED;**

(2) Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE.**


This November 7, 2005.



Signed By:

_Henry R Wilhoit Jr._

**United States District Judge**

---

[1]The Court notes that Defendant also sought dismissal based upon failure to join a party under Fed. R. Civ. Proc. 19 and failure to state a claim upon which relief can be granted. As Plaintiff fails to meet the threshold requirements of standing and jurisdiction, however, the Court need not reach those arguments.